# *L*EEDS *B*ROWN *L*AW, P.C.

One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

_____*Attorneys at Law*_____

December 10, 2018

*Via ECF*
Hon. Paul Oetken, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    **Lebron v. Lower East Side People's Mutual Housing Association, Inc., et al**
               Case Number: 17-CV-3953 (JPO)

Dear Judge Oetken:

      We represent Named Plaintiff Eugene Lebron and opt-in Plaintiffs Theodore Washington and Kenrick Jagdeo (collectively, "Plaintiffs") in the above-referenced Fair Labor Standards Act ("FLSA") matter and write jointly with Defendants pursuant to Your Honor's November 1, 2018 Order directing the parties to submit a motion for approval of the proposed Settlement Agreement, attached as **Exhibit A**. As set forth below, the parties respectfully request that the Court approve the proposed settlement, which provides each Plaintiff with a substantial share of the actual damages they are claiming, and which was negotiated at arm's-length between experienced counsel after holding a mediation session with Mediator Mike McKenna, Esq., who has substantial experience mediating wage and hour cases.[1]

**Factual & Legal Background**

      Plaintiff Lebron, who worked as a superintendent at Defendants' residential properties for approximately three months in 2017, filed a putative class and collective action Complaint (ECF Docket Number 1) on May 24, 2017, alleging that Defendants failed to pay him and similarly situated individuals the proper overtime wages for all hours worked in violation of the FLSA.

---

[1] The case was not resolved at mediation, but both parties learned additional information about the other side's position, evaluated the strength of their claims and defenses, and enabled Plaintiffs to assess Defendant's ability to withstand judgment. This made it possible to ultimately reach resolution.

*LEEDS BROWN LAW, P.C.*

Plaintiff also alleged that Defendants violated New York Labor Law ("NYLL") by failing to provide the weekly and annual notices required by NYLL § 195.[2]

Defendants deny the substance of these allegations. They maintain that all three Plaintiffs were paid properly for all hours worked, and that they complied with the notice requirements of NYLL § 195. Defendants also maintain that even if they were found not to have complied with NYLL § 195, they would have an affirmative defense based on their purported payment of all wages due.

On November 9, 2017, Plaintiffs filed a motion on consent for collective certification pursuant to 29 U.S.C. § 216(b). The motion was granted, and Plaintiffs' counsel subsequently mailed out notice to putative collective members, two of whom opted in.

The parties subsequently exchanged written discovery requests and responses. The parties then decided to try to resolve the matter prior to both parties incurring the expense of depositions. The parties reached an agreement in November 2018. For the reasons set forth below, Plaintiffs believe the Settlement is fair and reasonable, and respectfully request that this Court grant approval.

**Settlement Terms**

The Agreement provides that Defendants will pay the three Plaintiffs a total of $20,000 to resolve this Matter, broken down as follows:

| Plaintiff Lebron | $7,000 |
| Plaintiff Washington | $6,000 |
| Plaintiff Jagdeo | $7,000 |

The Agreement also provides for Defendants to separately pay $20,000 as attorneys' fees and costs. As discussed below, this represents a substantial discount from counsel's lodestar, based on rates similar to those previously approved in this District, and includes $1,297.39 as reimbursement for expenses advanced by Plaintiffs' counsel.

In turn, Plaintiffs release Defendants from the claims asserted as well as related state and federal wage claims, and Defendants release all potential claims against Plaintiffs, including potential counterclaims they could have asserted in this Litigation.

**The Proposed Settlement is Fair and Reasonable**

To approve settlement of an FLSA claim, the Court must find that the settlement is "fair and reasonable." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also* Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015); Baidal v. Concord Mgmt. of NY LLC, No. 17-CV-864 (JPO), 2018 U.S. Dist. LEXIS 177881 (S.D.N.Y. Oct. 15,

---

[2] Plaintiff Lebron also brought two individual claims for breach of contract and unjust enrichment based on Defendants' alleged failure to provide him an apartment. These claims are resolved as part of this proposed Settlement. *See* Ex. A.

*LEEDS BROWN LAW, P.C.*

2018). In making this assessment, the Court must consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id. In addition, courts often consider whether any factors exist that weigh *against* approval of the settlement, including: (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstances will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic location; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. Id. at 336.

For the reasons set forth below, the Agreement satisfies all of the Wolinsky criteria for a fair and reasonable settlement, and there are no significant factors weighing against approval.

*(i)   Plaintiffs Will Recover a Substantial Amount of their Actual Damages*

Plaintiffs estimate, based on their best recollection of the hours they worked, that their average weekly overtime damages as follows[3]:

|  | Avg. Off the Clock OT hours/week | OT Rate | Est. Unpaid OT Per Week | Weeks Worked | OT Owed |
|---|---|---|---|---|---|
| Lebron | 14 | $19.97 | $239.64 | 12 | $3,355.02 |
| Washington | 5 | $13.68 | $68.42 | 12 | $820.98 |
| Jagdeo | 5 | $13.13 | $65.63 | 63 | $4,143.75 |

Plaintiffs estimate their best-case actual damages for unpaid wages and statutory damages, based on the hours they would be able to testify to, are approximately as follows:

|  | Overtime | NYLL § 195 | Total |
|---|---|---|---|
| Lebron | $3,355.02 | $5,000 | $8,355.02 |
| Washington | $820.98 | $5,000 | $5,820.98 |
| Jagdeo | $4,143.75 | $5,000 | $9,143.75 |

As illustrated below, each Plaintiff will be receiving over 75% of his best-case actual damages, and, in the case of Plaintiff Washington, over 100% of his estimated best-case damages. Additionally, all three Plaintiffs are receiving over 50% of their estimated best-case damages including liquidated damages.

---

[3] Plaintiffs' estimate is based on a damage model prepared for settlement purposes, based on Plaintiffs' recollection of their average unpaid overtime hours per week.

*LEEDS BROWN LAW, P.C.*

|  | Est. Best-Case Actual Damages | Recovery | % of Best-Case Actual Damages | % of Best-Case Actual and Liq. Damages |
|---|---|---|---|---|
| Lebron[4] | $8,355.02 | $7,000 | 83% | 60% |
| Washington | $5,820.98 | $6,000 | 103% | 90% |
| Jagdeo | $9,143.75 | $7,000 | 76% | 53% |

This is an especially good result in light of the fact that Defendants produced time records for part of the relevant period that purported to show Plaintiffs working fewer hours than they recall for at least some weeks. Thus, for those periods, Plaintiffs faced the difficult challenge of proving "off the clock" work by demonstrating that Defendants' records were inaccurate.

### *(ii)   Avoidance of Anticipated Burdens and Expenses*

The parties have conducted written discovery, but have not yet incurred the cost and burden of depositions. In particular, Named Plaintiff Lebron, who relocated to California after filing this Action, faced the potential burden of having to travel to New York for his deposition, which would have posed a financial and personal hardship for him.

Additionally, further litigation would require both parties to invest substantial time and expenses in depositions, as well as possible Rule 23 class certification motions, summary judgment practice, trial, and appeals. While Plaintiffs are confident they would ultimately prevail, this process could take months or even years and drive up the costs of litigation on both sides while Plaintiffs wait to be compensated for work they performed several years ago.

### *(iii)   Each Party Faced Meaningful Litigation Risks*

Both sides faced significant risks if the case proceeded to summary judgment or trial. In particular, not only did the parties vigorously disagree about the number of hours Plaintiffs worked, but Plaintiffs' accounts differed from some of the records Defendants produced. While Plaintiffs question the accuracy of Defendants' records, they acknowledge that proving "off-the-clock" work would be more difficult than establishing the hours they worked would have been if Defendants kept no records at all. *See, e.g.,* Caballero v. Zaloumis Contracting Serv., 2013 U.S. Dist. LEXIS 23267 (S.D.N.Y. Feb. 20, 2013) (noting "non-negligible" risk of proving "off-the-clock" claims); *see also* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) (presumption in favor of employees' testimony regarding the hours they worked where employer fails to keep records). Additionally, the parties disagree about what is considered compensable work time for FLSA purposes. *See, e.g.,* Pichardo v. Hoyt Transp. Corp., No. 17-CV-3196 (DLI), 2018 U.S. Dist. LEXIS 16915, at *16 (E.D.N.Y. Jan. 31, 2018) (*adopted by* Pichardo v. Hoyt Transp. Corp., No. 17-cv-03196-DLI-RLM, 2018 U.S. Dist. LEXIS 41423 (E.D.N.Y. Mar. 12, 2018)) (discussing the difference between time in which employees are "engaged to wait", which is compensable, and time employees are "waiting to be engaged", which is not compensable). Finally, the parties disagree regarding whether Defendants adequately complied with NYLL § 195.

---

[4] Plaintiff Lebron's award includes compensation for release of his common law claims related to Defendants' alleged failure to provide him with an apartment.

## *LEEDS BROWN LAW, P.C.*

Rather than face those risks, the parties opted for certainty and closure over protracted and uncertain litigation.

> *(iv)    The Settlement Was Reached Via Arm's-Length Negotiations with Experienced Counsel, and there was no Fraud or Collusion*

Both parties were represented in these negotiations by experienced counsel. Plaintiff's Counsel has many years of experience representing employees in wage and hour litigations. Indeed, Leeds Brown Law, P.C. has been commended by judges in this Circuit. *See, e.g.,* Cohan v. Columbia Sussex Mgmt., LLC, No. CV 12-3203 (AKT), 2018 U.S. Dist. LEXIS 170192, at *11 (E.D.N.Y. Sep. 28, 2018) ("The quality of the representation in this litigation is evident from the record. Class counsel [LBL and co-counsel Virginia and Ambinder, LLP] are well known class action employment lawyers who have extensive experience and special expertise in prosecuting and settling FLSA and NYLL wage and hour cases… Having observed the efforts of counsel in various Court conferences as well as at the February 13, 2018 Fairness Hearing - in addition to the Court's previous cases with these attorneys…the Court is satisfied that Class Counsel provided quality representation to the Class Members."). Thus, this factor also weighs in favor of approval.

Additionally, as to fraud and collusion, both parties recognize that the other may have meritorious claims and defenses. There is no simply no evidence of fraud or collusion; to the contrary, this settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. SITA Info. Networking Computing USA, Inc., 2008 U.S. Dist. LEXIS 46174, at *2 (E.D.N.Y. June 12, 2008).[5]

> *(v)    No Factors Weighing Against Settlement*

Not only do the primary Wolinsky factors demonstrate the fairness and reasonableness of this settlement, but there are also no compelling considerations weighing against settlement. Other individuals who are similarly situated were notified of the lawsuit and chose not to opt in. Neither those individuals or any other non-party to this matter is prejudiced by its potential resolution for the individual Named Plaintiff and two opt-in Plaintiffs.

Furthermore, the circumstances giving rise to this case are not likely to recur between these parties, as none of the three Plaintiffs is still employed by Defendants.

Additionally, none of the issues that often lead to rejection of FLSA settlements is present here. The release is limited to the claims asserted in the lawsuit and related state law wage claims, and the Agreement does not contain a confidentiality provision. *See, e.g.* Shim v. Z-Live Inc., No.

---

[5] This recitation does not suggest that either party has advanced non-meritorious claims or defenses. Instead, counsel for the parties acknowledge that complex legal and factual issues give rise to meaningful claims and defenses on both sides, some stronger than others. In light of this, all parties believe the settlement reached is an appropriate resolution.

# *LEEDS BROWN LAW, P.C.*

17-CV-6938 (JPO), 2018 U.S. Dist. LEXIS 199762 (S.D.N.Y. Nov. 20, 2018) (approving FLSA settlement after parties narrowed the scope of release and non-disparagement provisions).

Finally, Plaintiffs are not aware of any other currently pending actions against Defendants based on similar claims, nor are there novel issues of fact or law that should be resolved here. In particular, unlike in many FLSA cases involving superintendents, Defendants in this case do not claim that Plaintiffs were exempt from overtime. Thus, this factor does not weigh against approval of the settlement.

In short, none of the Wolinsky factors weigh against settlement. Even if this Court were to find that one or more factors weighed against settlement, the Wolinsky factors as a whole overwhelmingly weigh in favor of approval.

**The Agreed-Upon Payment for Attorneys' Fees and Costs is Reasonable**

"A reasonable fee is calculated by determining 'the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee." Bazignan v. Team Castle Hill Corp., No. 13 Civ. 8382 (PAC), 2015 U.S. Dist. LEXIS 27420, 2015 WL 1000034, at *4 (S.D.N.Y. Mar. 5, 2015) (*quoting* Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014)). Adjustments to the lodestar are made only in "rare circumstances." Jimenez v. KLB Foods, Inc., No. 12-CV-6796 (JPO), 2015 U.S. Dist. LEXIS 84370, at *2 (S.D.N.Y. June 29, 2015)

In this case, the Settlement Agreement provides for Plaintiffs' Counsel, Leeds Brown Law, P.C. ("LBL"), to receive $18,702.61 as attorneys' fees and $1,297.39 in expenses, which represents only 62.5% of our lodestar, based on rates similar to those previously approved by courts in this district. A true and correct copy of LBL's bill for this matter, based on contemporaneous time records, is attached as **Exhibit B**.

The various tasks undertaken by LBL in prosecuting this action and achieving the proposed settlement included, but were not limited to, engaging in client communication, identifying the claims and filing the complaint, researching the ownership of the subject buildings and finding and reviewing public records as part of counsel's due diligence, moving for collective certification pursuant to FLSA § 216(b), sending out notice of collective certification and communicating with potential opt-ins, serving and responding to written discovery requests, reviewing pay and time records for the Named Plaintiff and opt-in Plaintiffs to compute a damage model, participating in the June 15, 2018 mediation, negotiating this Agreement, and discussing the Agreement with each Plaintiff to ensure that they understood what they were agreeing to.

In performing these tasks, LBL expended approximately 104 hours of attorney, paralegal, and staff member time, for an aggregate lodestar of $31,205.20 plus expense disbursements totaling $1,297.39. The $20,000 Defendants agreed to pay as attorneys' fees and costs, which were negotiated separately from the awards to the three Plaintiffs, thus represents a negative multiplier. In fact, while Plaintiffs are each receiving at least 75% of their estimated best-case actual damages, Plaintiffs' counsel has agreed to accept only 62.5% of our lodestar in order to achieve an immediate recovery for our clients. This multiplier of less than one falls well below the range regularly approved by courts. *See* Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481 (S.D.N.Y. 2013)

# *LEEDS BROWN LAW, P.C.*

("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."). These hours are reasonable for a case like this one. Additionally, to maximize efficiency, almost all of the hours expended on this case were by associates and paralegals, who bill at substantially lower rates than the partners.

LBL primarily had two attorneys assigned to assist in the prosecution of this action, both of who work in LBL's wage and hour class action department. LBL endeavored to have these individuals handle the majority of workload on this case to minimize duplicate efforts.

- o Michael A. Tompkins ("MT") is a senior associate and a graduate of the University of North Carolina – Chapel Hill (B.A. 2003), Indiana University – Bloomington (M.S. 2006), and Hofstra University School of Law (J.D. 2010) and has been working for LBL and litigating in federal and state court since 2011, including those based under the FLSA and NYLL. Mr. Tompkins bills out at a rate of $410, which is comparable to rates previously approved in this district.

- o I ("LR") am an associate at LBL and a graduate of American University (B.A. 2007) and NYU School of Law (J.D. 2013). Since joining LBL in 2016, I have practiced almost exclusively in the area of employment law, particularly wage and hour litigation, including several cases involving superintendents claiming unpaid wages. Prior to joining LBL, I worked as a legal fellow for a New York labor union and clerked for U.S. Magistrate Judge Steven I. Locke. I billed out at a rate of $335 on this case, which is comparable to previously approved rates in this district.

The aforementioned hourly rates, or those substantially similar thereto, have been approved by New York courts conducting a lodestar cross-check on many occasions in comparable wage and hour actions. *See, e.g.*, Uddin v. Interstate Mgmt. Co., LLC, 16-cv-2149 (AJN) (S.D.N.Y. Oct. 3, 2017) (J. Nathan) (approving award of fees where LBL billed partners at $530 per hour and associates at up to $405 per hour) Klein v. Octagon, Inc., 14-cv-6770 (AT) (S.D.N.Y. Sept. 7, 2016) (J. Torres) (approving fees where request was based on the same or similar rates); Romero et al v. Mitorotonda Services, Inc. d/b/a Chief Fire Prevention, 15-cv-5778 (S.D.N.Y. May 19, 2017) (same); Tart v. Lions Gate Entm't Corp., 14-cv-8004 (AJN) (S.D.N.Y. May 16, 2016) (J. Nathan) (same); Marcus v. AXA Advisors, LLC, 11-cv-2339 (SMG) (E.D.N.Y. May 6, 2016) (J. Gold) (same); Vitetta v. Sirius XM Radio Inc., 14-cv-2926 (VEC) (S.D.N.Y Feb. 17, 2016) (J. Caproni) (same); Ramos v. Hilltop Mgmt Group LLC, 17-cv-3240 (ILG)(JO) (E.D.N.Y. Dec. 22, 2017).

It is well established that attorneys' fees need not be proportional to the amount of a plaintiff's recovery in FLSA and NYLL cases. *See, e.g.,* Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) *aff'd*, 356 F. App'x 495 (2d Cir. 2009) ("courts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery. The fee provisions contained in the FLSA and NYLL were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements."). Indeed, the FLSA and NYLL fee-shifting provisions were intended to enable qualified attorneys such as our firm to take cases such as this one, where the

# *LEEDS BROWN LAW, P.C.*

Plaintiffs earned close to minimum wage, on a contingency basis. Additionally, in contrast to common fund cases, all three Plaintiffs individually agreed to the Settlement Agreement, including the negotiated attorneys' fees and costs. *See* <u>Misiewicz v. D'Onofrio Gen. Contractors Corp.</u>, No. 08 CV 4377 (KAM)(CLP), 2010 U.S. Dist. LEXIS 60985, at *13-15 (E.D.N.Y. May 17, 2010) (noting "greater range of reasonableness" in individual FLSA settlements where all parties agreed to the amount of attorneys' fees).

As discussed above, the fees Plaintiffs and their counsel agreed to accept in this case represent a proportionately lower share of the firm's lodestar than the share of actual damages each Plaintiff is receiving. Thus, the $20,000 agreed to by Plaintiffs and Defendants as payment for attorneys' fees and costs is clearly reasonable.

**<u>Conclusion</u>**

For all the foregoing reasons, the parties respectfully request that the Court grant this letter motion and approve the Settlement Agreement.

We thank the Court for its time and consideration.

**LEEDS BROWN LAW, P.C.**

_____
Laura R. Reznick, Esq.

cc: All Counsel of Record (via ECF)